# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

DRESSER RAND COMPANY,

                             Plaintiff,

-vs-

UNITED STEEL WORKERS OF AMERICA
AFL-CIO CLC an unincorporated association,
UNITED STEEL WORKERS OF AMERICA LOCAL
4601 AFL-CIO, CLC, LEO W. GERARD
International president of United Steel Workers of
America AFL-CIO CLC, JOHN J. BAGLIONE, JR.
president of United Steel Workers of America Local
4601 AFL CIO CLC, ANTHONY JURENKO vice
president of United Steel Workers of America Local
4601 AFL CIO CLC, PAT KELLY grievance chair
and financial secretary of United Steel Workers of
America Local 4601 AFL-CIO CLC,

                             Defendants.

DECISION & ORDER
05-CV-6205-CJS

---

## APPEARANCES

For plaintiff:                Linda H. Joseph, Esq.
                                 Schroder, Joseph & Associates, LLP
                                 766 Ellicott Street
                                 Buffalo, NY 14203
                                 (716) 881-4900

For defendants:            E. Joseph Giroux, Esq.
                                 Creighton, Pearce, Johnsen & Giroux
                                 560 Ellicott Square Building
                                 295 Main Street
                                 Buffalo, NY 14203
                                 (716) 854-0007

**INTRODUCTION**

This labor case is before the Court on plaintiff's motion (# 24) for summary judgment[1] and defendants' cross-motion (# 33) also seeking summary judgment. In its complaint, plaintiff contends that defendants breached a "no strike" provision of the collective bargaining agreement among the parties. For the reasons stated below, plaintiff's motion is granted in part and denied in part, and defendants' motion is denied.

**BACKGROUND**

Plaintiff Dresser Rand Company ("Dresser Rand") operates a facility in Olean, New York, at which it manufactures and tests compressors that are primarily used in the oil and gas industry. (Pl.'s Statement of Facts ¶¶ 1 & 2.) A compressor is made to a customer's specifications and the applicable contract requires Dresser Rand to test the completed compressor in the presence of a representative of the customer. (*Id*. ¶¶ 3 & 4.) Accordingly, a test date is generally arranged weeks in advance and the production schedule must accommodate that date, since its rescheduling would postpone the necessary testing beyond the date delivery required under the contract. (*Id*. ¶ 4.) Dresser Rand is concerned that if its customers believe that a dispute between Dresser Rand and its unionized workforce could result in a delay in delivery of the finished product, the customers will turn to Dresser Rand's competitors. (*Id*. ¶ 5.) Defendants dispute this concern, contending no evidence in support of Dresser Rand's contention has been produced.

---

[1] In their Reply memorandum, Dresser Rand states it, "has moved for partial summary judgment. Accordingly, both the amount of its damages and the scope of any injunction are not before the Court." (Pl.'s Reply Mem. of Law, at 3.) Therefore, the Court does not address whether Dresser Rand is entitled any injunctive relief.

The union, United Steelworkers of America A.F.L.-C.I.O., CLC ("International"), through United Steelworkers of America Local 4601 A.F.L.-C.I.I., CLC ("Local"), represents Dresser Rand's production and maintenance employees at the Olean facility. (*Id*. ¶ 6.) The collective bargaining agreement between the International[2] and Dresser Rand, provides in pertinent part as follows:

> Should differences arise between the Company and the Union as to the meaning and application of the provision of this agreement, or should any problems or grievances of any kind arise in the plants, there shall be no suspension of work on account of such differences, but such differences shall be adjusted in the following manner:
>
> * * *
>
> In the event the dispute shall not have been satisfactorily settled,…, the matter shall be submitted to arbitration upon written notice of the party filing the grievance.

(Article 5, Section 5.1, 2003 Agreement between Dresser Rand Company, Olean Operations, and the United Steelworkers of America, Local 4601, A.F.L.-C.I.O.-C.L.C. (Ex. C, Pl.'s Statement of Undisputed Facts).) Article 13 of the same agreement states,

> It is agreed that the Union and its members, individually and collectively, will not, during the term of this Agreement, cause, permit, or take part in any strike, picketing, sit-down, slow-down, stay in, or other curtailment or restricting of production or interference of work in or about the Company's plant or premises. Correlative with this provision, the Company agrees not to engage in any lock-out.

---

[2]While plaintiff states that Local is also a party, International contends that pursuant to its constitution, International is the contracting party in all collective bargaining agreements. (*See* Def.s' Counter Statement to Pl.'s Undisputed Material Facts ¶ 6.)

-3-

(*Id*., at Article 13.) The Agreement remains in effect until midnight on June 14, 2008, with a provision permitting automatic renewals. (*Id*., at Article 24.)

Defendant John Baglione ("Baglione") is the president of Local. (Pl.'s Statement of Undisputed Material Facts ¶ 10.) James Shaughnessy ("Shaughnessy") is a staff representative with International. (Pl.'s Statement of Undisputed Material Facts ¶ 11.) Shaughnessy's job responsibilities include communicating information back and forth between Local and the officers of International. (Pl.'s Statement of Undisputed Material Facts ¶ 12.) At his deposition, Shaughnessy testified that if a vote were taken by the Local not to work overtime, that vote would violate Article 13 of the collective bargaining agreement. The International's constitution permits its president to take action leading to a hearing and possible suspension or revocation of the charter of any local union, where the president has reason to believe that the Local is failing to comply with International's constitution. (Pl.'s Statement of Undisputed Material Facts ¶ 17.) Although defendants do not dispute this last claim by plaintiff, they argue it is "not material to this action." (Def.s' Counter Statement to Pl.'s Undisputed Material Facts ¶ 9.)

In December 2003 (plaintiff's statement does not specify the exact date), Dresser Rand invited an outside service to take a walk-through the Olean plant to develop a cost estimate of having janitorial work performed by such outside service. (Pl.'s Statement of Undisputed Material Facts ¶ 19.) On December 12, 2003, immediately following the walk-through, the Local filed a grievance alleging that any decision to contract out janitorial services and eliminate the unionized janitorial positions would violate the collective bargaining agreement. Dresser Rand and the Local mutually agreed to hold the grievance

and not adjudicate it until Dresser Rand actually did propose to contract out janitorial services.

In March 2004, Dresser Rand met with the Local's officers to advise them of its projections regarding cost savings it could achieve by contracting out janitorial services. On April 7, 2005, Dresser Rand informed the Local of its proposal to eliminate the janitor classification based on the expected cost savings. The Local was invited to submit an alternative which would achieve some cost savings. (Donna McIntyre,("McIntyre") Aff., at 4.) On April 20, 2005, the Local presented an alternative proposal which McIntyre, Dresser Rand's Human Resource Manager at Olean, rejected on April 21, 2005. (McIntyre Aff., at 5-6.)

During the week of April 10, 2005, while at the International's union convention in Las Vegas, Baglione, Shaughnessy, Pat Kelly ("Kelly"), the grievance chair and financial secretary of the Local, and Tom Stimlinger ("Stimlinger"), a member of the Local's Grievance Committee, met to discuss the reaction of the Olean employees to the announcement that Dresser Rand would contract out janitorial work. Baglione informed Shaughnessy that "the members were upset and some of them were talking about walking out. They were saying that if the company can violate the contract, why can't we." (Pl.'s Statement of Undisputed Material Facts ¶ 29. ) Stimlinger told Shaughnessy that, "all hell's breaking loose and we have to do something." (Pl.'s Statement of Undisputed Material Facts ¶ 30.) Baglione told Shaughnessy that Local was calling a special meeting for Sunday, April 17, 2005. He also told Shaughnessy that, "Pat Kelly and I had to defuse walkouts in turning down overtime in 2003." (Pl.'s Statement of Undisputed Material Facts ¶ 32.) Shaughnessy then reminded Baglione that walkouts were not an option.

At the Local's special meeting held on April 17, 2005, a motion unanimously passed directing that, "the members decline voluntary overtime for the following weekend to protest the Company's subcontracting janitors' work if the meeting scheduled for April 20, 2005 was not successful in reversing the Company's actions." (Responses of Defendants' United Steel Workers of America, Local 4601, John J. Baglione, Jr., Anthony Jurenko and Pat Kelly to Plaintiffs' First Set in Interrogatories (Undated), at 6 (Ex. I, Appendix to Plaintiffs Statement of Undisputed Material Facts).) At the meeting, Baglione told the members that their suggestions for either a walkout or wildcat strike were illegal. The Local communicated the results of the April 17, 2005, special meeting to the members who had not attended through the union's stewards. (Pl.'s Statement of Undisputed Material Facts ¶ 37.).

On April 19, 2005, McIntyre, received a telephone call from an hourly employee at Olean, who requested that his name remain confidential. (*Id.*) The employee informed McIntyre that on Sunday, April 17, 2005, a meeting had been held with union employees and that they were advised not to work overtime due to the pending dispute regarding janitorial services. The employee also advised McIntyre, that although he considered working overtime during the upcoming week, he had decided not to do so because of the Local's instructions. McIntyre investigated this report by questioning other hourly employees and received similar reports confirming to her satisfaction that Local instructed employees to decline overtime work.

On April 19, 2005, McIntyre met with representatives of the Local and Shaughnessy, the International's representative. McIntyre discussed the reports she had received regarding union members being instructed not to work overtime. (McIntyre Aff., at 5.) According to McIntyre, Shaughnessy responded that he was unaware of the April 17, 2005,

meeting and that the the International was not advising the Local to decline overtime. Shaugnessy did state, though, "we don't have mandatory overtime. Overtime is voluntary. We have no control over who works and who does not work." (*Id*., at 136-37.) Baglione, the Local's president, informed McIntyre that he personally did not direct anyone to advise employees not to work overtime, nor did he himself direct any employees not to work overtime. (McIntyre Aff., at 5.) However, Baglione did not inform McIntyre about the special meeting that took place on April 17, 2005, or the motion, that passed at that meeting. Moreover, it was only after the meeting with McIntyre that Baglione informed Shaughnessy of the motion

Dresser Rand's decision to contract out the janitorial services affected two employees (Pl.'s Statement of Undisputed Material Facts ¶ 24.). After notifying the Local, Dresser Rand offered both employees alternative employment, which each accepted. (Pl.'s Statement of Undisputed Material Facts ¶ 25.) Nonetheless, as a result of Dresser Rand's decision to contract out janitorial services, the Local reinstituted its grievance against the company. (Pl.'s Statement of Undisputed Material Facts ¶ 27.)

During the three weekends *preceding* the weekend of April 23 and 24, 2005, Dresser Rand hourly employees averaged 1,415 hours of overtime. (Pl.'s Statement of Undisputed Material Facts ¶ 47.) During the weekend of April 23 and 24, 2005, however, employees collectively refused 2,225 hours of overtime on Saturday, and 1,475 hours on Sunday. Consequently, employees worked only 228 hours of overtime at the Olean facility during the weekend of April 23 and 24, 2005. (Pl.'s Statement of Undisputed Material Facts ¶¶ 48 and 49.) During the weekend of April 30 and May 1, 2005, employees collectively refused 2,060 hours of overtime on Saturday, April 30, 2005, and 1,293 hours on Sunday, May 1, 2005.

(Pl.'s Statement of Undisputed Material Facts ¶ 50.) During the weekend of April 30 and May 1, 2005, hourly employees worked only 893 hours of overtime at the Olean facility. The employees' refusal to work overtime interfered with and curtailed production at the Olean facility. (Pl.'s Statement of Undisputed Material Facts ¶ 52.)

On April 27, 2005, the District Director for District 4 of International, William Pienta ("Pienta"), called Baglione and instructed him that "until this all got straightened out it would be in our best interest to quit that picketing[3] and for us as a union to encourage all members to get to work as normal." (Pl.'s Statement of Undisputed Material Facts ¶ 53.) Following that phone call, Shaughnessy, for the first time, requested that Baglione encourage all members not to use the dispute regarding the janitors as a reason for turning down overtime and that members should "work what they would have normally worked and let us pursue it through the grievance process." (Pl.'s Statement of Undisputed Material Facts ¶ 54.) Dresser Rand filed the instant lawsuit on April 2, 2005. At a May 1, 2005, meeting of Local, Shaughnessy told the members that, "they should work what they normally work . . . ." (Pl.'s Statement of Undisputed Material Facts ¶ 56.)

## STANDARDS OF LAW

*Summary Judgment Standard*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[3]This was Baglione's first mention of picketing "we were on – out picketing that Wednesday . . . ." (Baglione Dep., at 153.)

to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-

49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

***Labor Management Relations Act, Section 301***

Section 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185 (1947), provides in pertinent part as follows:

§ 185. Suits by and against labor organizations

(a) Venue, amount, and citizenship. Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments. Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of

its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

* * *

(e) Determination of question of agency. For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling.

29 U.S.C. § 185.

## ANALYSIS

Plaintiff argues defendants, in violation of Article 13 of the collective bargaining agreement, encouraged hourly employees to refuse overtime work, which had the effect of disrupting Dresser Rand's production schedule. Accordingly, plaintiff asserts it is entitled to summary judgment. Defendants counter[4] that plaintiff is not entitled to judgment since: (1) section 301 of the Labor Management Relations Act does not permit law suits against individual members or officers of a union; (2) Dresser Rand is not entitled to damages since it has failed to exhaust its contractual remedies under the collective bargaining agreement; (3) there is no evidence the International authorized the alleged overtime refusal; and (4) the

---

[4]Defendants also argue that Dresser Rand is not entitled to injunctive relief; however, the Court agrees with Dresser Rand's position, stated in its Reply brief, that the injunctive relief is premature and, in any event, Dresser Rand is seeking only partial summary judgment, leaving damages and the question of a permanent injunction for a later determination.(Pl.'s Reply Mem. of Law, at 10-11.)

Local is not a party to the collective bargaining agreement, which is between Dresser Rand and the International. The Court will first consider the question of exhaustion.

***Exhaustion of Contractual Remedies***

Dresser Rand responds to defendants' argument, that they have failed to exhaust their contractual remedies, by claiming that defendants waived any right they had to arbitrate. (Pl.'s Reply Mem. of Law, at 4.) In the alternative, Dresser Rand argues, that, in any event, it had no right to demand arbitration of defendants' grievance under Article 5 of the collective bargaining agreement. The Court agrees with Dresser Rand on both points.

Dresser Rand filed suit on April 2, 2005, and a scheduling order was issued on July 19, 2005, setting deadlines for discovery and filing of motions. Those deadlines were extended by further orders filed on November 30, 2005, and March 9, 2006. In that regard, the final deadline for the completion of discovery was January 20, 2006, and the final deadline for dispositive motions was April 3, 2006. Dresser Rand, in fact, filed its motion for summary judgment on April 3, 2006. Defendants only raised arbitration after the completion of discovery and after the date for the filing of dispositive motions. In light of these circumstances, the defendants waived the issue. *Coca-Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52, 58 (2d Cir. 2001) ("those cases in which we have found a waiver have involved substantially more protracted involvement in litigation than the instant case, often with the party charged with waiver delaying until the very last opportunity or even until it has lost on the merits."); *Manos v. Geissler*, 321 F. Supp. 2d 588, 593 (S.D.N.Y. 2004) ("A party that engages in "protracted litigation" waives his right to arbitrate when an order compelling arbitration would result in prejudice to the party opposing arbitration.")

Furthermore, the Court's reading of Article 5 of the collective bargaining agreement comports with Dresser Rand's interpretation that only the grieving party can demand arbitration. In this case, the grievance was filed by defendants, so they had the power to demand arbitration, not Dresser Rand: "In the event the dispute shall not have been satisfactorily settled, . . . , the matter shall be submitted to arbitration upon written notice of the party filing the grievance." (Article 5, Section 5.1, 2003 Agreement between Dresser-Rand Company, Olean Operations, and the United Steelworkers of America, Local 4601, A.F.L.-C.I.O.-C.L.C. (Ex. C, Pl.'s Statement of Undisputed Facts).)

***Breach of the Collective Bargaining Agreement***

The Court next turns to the question of whether the collective bargaining agreement was breached. On this issue, the Court finds that the Local's affirmative vote at the April 17, 2005, meeting[5] violated Article 13 of the collective bargaining agreement. Article 13's language includes the requirement that the union and its members, either individually or collectively, will not permit any curtailment or restricting of production or interference of work. The vote on the motion, taken at a special meeting of Local, clearly violates the "permit" portion of Article 13. The statistical evidence of the dramatic reduction in overtime supports Dresser Rand's position that Local permitted curtailment or restriction of production or interference with work at the Olean facility.

---

[5]The meeting was called to vote on the motion that "the members decline voluntary overtime for the following weekend to protest the Company's subcontracting janitors' work if the meeting scheduled for April 20, 2005 was not successful in reversing the Company's actions" (Responses of Defendants' United Steel Workers of America, Local 4601, John J. Baglione, Jr., Anthony Jurenko and Pat Kelly to Plaintiffs' First Set in Interrogatories (Undated), at 6 (Ex. I, Appendix to Plaintiff's Statement of Undisputed Material Facts)).

*Liability of International and Local*

As to the liability of the International and the Local, the collective bargaining agreement, in the relevant portion, states as follows:

> This agreement made and entered into this 15th day of June, 2003, by and between the Olean Operations, including the warehouse, of the Dresser Rand Company (hereinafter, referred to as the "Company") and the United Steelworkers of America, A.F.L. - C.I.I., CLC, for itself and on behalf of the employees of the Olean Operations including the warehouse, of the Dresser Rand Company as employees are herein defined (hereinafter referred to as the "Union").

(Agreement, 2003 Agreement between Dresser-Rand Company, Olean Operations, and the United Steelworkers of America, Local 4601, A.F.L.-C.I.O.-C.L.C. (Ex. C, Pl.'s Statement of Undisputed Facts).) However, the cover of the collective bargaining agreement is entitled, "2003 Agreement between Dresser Rand Company, Olean Operations, and the United Steelworkers of America, *Local 4601*, A.F.L.-C.I.O.-C.L.C. (*Id.* (emphasis added).) Defendants, in their papers, contend that the Local was not a party under the collective bargaining contract, and International had no duty to discourage the Local from its action of encouraging the hourly workers to refuse overtime. However, at oral argument, counsel for defendants stated he was not pressing the point that the Local was not a party to the collective bargaining agreement. The Court notes that the Local's officers, including Baglione, were signatories to the agreement. (2003 Agreement between Dresser Rand Company, Olean Operations, and the United Steelworkers of America, *Local 4601*, A.F.L.-C.I.O.-C.L.C., at 24.) Accordingly, the Court concludes that the Local was bound by the collective bargaining agreement as a signatory to it, and that its action, allowing the passage

of a motion that clearly violated Article 13, makes the Local liable for a violation of that Article.

With regard to the International, defendants rely, in part, on *Carbon Fuel Co. v. UMW*, 444 U.S. 212 (1979), in which Mr. Justice Brennan, writing for the Court, stated,

> The question for decision in this case is whether an international union, which neither instigates, supports, ratifies, nor encourages "wildcat" strikes engaged in by local unions in violation of a collective-bargaining agreement, may be held liable in damages to an affected employer if the union did not use all reasonable means available to it to prevent the strikes or bring about their termination.

*Carbon Fuel Co.*, 444 U.S. at 213. Unlike the situation in *Carbon Fuel Co.*, though, the International here is accused of supporting, ratifying and promoting the Local to engage in its encouragement to the hourly employees to refuse overtime work. However, on this point, the Court determines that a material question of fact precludes summary judgment for either side with regard to International's liability.

Dresser Rand's evidentiary proof shows that Shaughnessy learned about the April 17, 2005, motion during a discussion with Baglione following Baglione's and Shaughnessy's conversation with McIntyre on April 19, 2005. Baglione testified that Shaughnessy did not instruct him not to "take this action." (Baglione Dep., at 136 (Ex. J., Appendix to Pl's Statement of Undisputed Facts).) Further, Baglione testified that Shaughnessy, in the meeting with McIntyre, "stated we don't have mandatory overtime. Overtime is voluntary. We have no control over who works and who does not work." (*Id.*, at 136-37.) Baglione was then asked, "[s]o you saw his [Shaughnessy's] statements [to McIntyre] to be supportive of the actions taken at the April 17th, 2005 meeting at least as of April 19th, 2005?" He

responded, "[a]s long as overtime's voluntary, they turned it down. We were not directing it. If they turned it down—." (*Id*., at 137.)

Shaughnessy, in his affidavit filed in opposition to Dresser Rand's motion, states that he is a "casual representative" of International, and did not know about the refusal of hourly employees to work overtime until April 27, 2005. (Shaughnessy Aff. ¶ 12.) In his affidavit in opposition to Dresser Rand's motion, Baglione also states that he did not hear about employees refusing overtime until April 27, 2005. (Baglione Aff. ¶ 12.)

McIntyre states in her affidavit in support of Dresser Rand's motion that she received a call on April 19, 2005, from an hourly employee, whose name she did not disclose, in which the employee stated that at the April 17, 2005, union meeting, he and other employees had been advised not to work overtime. (McIntyre Aff. ¶ 15.) McIntyre spoke with other hourly employees and states in her affidavit, "I have received similar reports confirming that Local 4601 has encouraged and/or instructed the employees to decline overtime work." (*Id*. ¶ 17.) McIntyre also clearly states that on April 19, 2005, she told Baglione and Shaughnessy about the reports she had received that union members had been instructed not to work overtime. (*Id*. ¶ 20.)

Baglione testified that he did not recall whether he told Shaughnessy about the motion at the April 17, 2005, meeting on April 19, 2005, just after meting with McIntyre. (Baglione Dep., at 131-32.) However, in follow-up questions, Baglione stated, "[i]t's safe to assume," with regard to whether Shaughnessy "would have learned that there had been a vote at that meeting on April 19 [sic] when you met with the grievance people outside the meeting? He would have been aware that there was a vote by then?" (Baglione Dep., at 136.) The Court determines that this evidence is insufficient to prove, as a matter of law, that the International

is liable, and that a material question of fact exists as to whether Shaughnessy "ratified" the Local's violation of Article 13.

*Liability of the Individually Named Defendants*

Dresser Rand's counsel stated at oral argument that the individually named defendants, Leo W. Gerard, John J. Baglione, Jr., Anthony Jurenko, and Pat Kelly, were all sued in their official capacities as officers of United Steelworkers of America, A.F.L.-C.I.O., C.L.C., and Local. Accordingly, the Court denies defendants' motion to dismiss the lawsuit as against them at this time.

**CONCLUSION**

Dresser Rand's motion for partial summary judgment (# 24), is granted in part. The Court determines that the United Steel Workers of America Local 4601 AFL-CIO, CLC, is liable for a violation of Article 13 of the collective bargaining agreement. In all other respects, Dresser Rand's motion is denied without prejudice, as is defendants' motion (# 33) for summary judgment.

IT IS SO ORDERED.

Dated: November 21, 2006
       Rochester, New York

                    ENTER:
                           /s/ Charles J. Siragusa
                           CHARLES J. SIRAGUSA
                           United States District Judge